556 So.2d 406 (1989)
PRESTRESSED DECKING CORP. and Travelers Insurance Company, Appellants,
v.
Edgardo MEDRANO, Appellee.
No. 88-536.
District Court of Appeal of Florida, First District.
August 2, 1989.
Rehearings Denied February 23, 1990.
Daniel J. Sullivan of Gladson and Sullivan, South Miami, for appellants.
Jerold Feuer, Miami, for appellee.
BOOTH, Judge.
This cause is before us on appeal of an order adjudicating claimant permanently totally disabled and awarding various benefits. The employer and carrier (E/C) raise seven issues for our consideration on appeal, *407 which are (1) whether the deputy commissioner correctly determined claimant's average weekly wage (AWW), (2) whether the deputy erred in ruling that the E/C controverted the existence of a compensable psychiatric condition, (3) whether the deputy erred in awarding the wife payment for past 24-hour-per-day attendant care, (4) whether the deputy erred in ordering that no credit be given against permanent total disability benefits for temporary total disability benefits earlier paid, (5) whether the deputy erred in ordering the E/C to pay for psychiatric counseling for claimant's wife and family, (6) whether a justiciable controversy existed concerning past and future travel and medication expenses and future medical services, and (7) whether the deputy erred in ordering the E/C to pay a psychologist's bill. We affirm in part and reverse in part.
Claimant is a 35-year-old Honduran carpenter who fell 14 feet and landed on his head and back. He was in a coma for one week, and competent, substantial evidence supports the deputy's findings that claimant has a seizure disorder and organic brain syndrome. The results of these conditions are, among other things, that claimant has a functional intelligence quotient of 70, cannot be vocationally rehabilitated, and must be watched 24 hours a day. His personality was totally changed by the accident, and he is now impulsive, easily enraged, and often abusive to other people. The brunt of this behavior is suffered by his wife and three young children, and his wife has at times found it almost impossible to continue living with claimant. However, the alternative is institutionalization, and medical testimony indicated that it is in claimant's best interest to remain with his family if possible. Further relevant facts will be discussed while resolving particular issues.
First, the deputy did not err in setting claimant's AWW. Under Section 440.14(1)(a), Florida Statutes, wages are calculated under the "13-week" method when the employee has worked not less than 90 percent of his customary full-time hours during the 13 weeks preceding the accident. The deputy found that claimant customarily worked 54 hours per week and further found that the employer's records for the 13 weeks prior to the accident showed that claimant only worked 40 hours weekly. The deputy accordingly concluded that claimant had not worked "substantially," within the meaning of the statute, during the 13 weeks preceding the accident and based claimant's AWW on a 54-hour week.
The finding that claimant customarily worked 54 hours per week was supported by claimant's own testimony and an adjuster's testimony that claimant normally worked six days weekly. Although claimant's memory problems associated with his brain damage raise the possibility that he was incompetent to testify about his hours, no challenge to competency was made below. As the testimony was not proved factually incredible and claimant was not shown incompetent to testify on the matter, competent, substantial evidence supported this factual determination. Accordingly, the deputy properly calculated claimant's AWW under the contract-of-employment method of determining claimant's full-time weekly wage. Newell v. Seaboard Contractors, 473 So.2d 787 (Fla. 1st DCA 1985), § 440.14(1)(d), Fla. Stat.
However, we reverse the deputy's ruling that the E/C controverted psychiatric benefits. The record reflects that the E/C's attorney was assigned to the case relatively late and soon thereafter attended a pretrial hearing at which the parties were required to complete the pretrial stipulation. Claimant requested a variety of psychiatric benefits and alleged a variety of brain-injury problems, and one of the benefits requested on the stipulation and located in the same paragraph where specific psychiatric benefits had been requested, stated "see claim." Several claims had been filed in the case by claimant's initial and ultimate attorneys. The E/C's attorney answered with a general denial and requested further elaboration of "see claim," but the E/C's position had consistently been to deny organic brain syndrome and seizure disorder while nevertheless admitting *408 that some psychiatric care was necessary. Psychiatric treatment had accordingly been provided during the claim's pendency.
Claimant's attorney's position at final hearing, which the deputy accepted, was that by so wording the stipulation, the E/C controverted all psychiatric benefits including the ones they were already providing. Competent, substantial evidence does not support the deputy's adoption of that position. The deputy reasoned that the pretrial stipulations were ambiguous but indicated that psychiatric care was controverted, and that although the E/C continued to pay for psychiatric treatment, they did not believe that claimant was psychiatrically impaired because at one time they temporarily cut off benefits.
Although the pretrial stipulations were ambiguous, claimant's own counsel caused part of the problem when he wrote "see claim" instead of being specific. Likewise, the E/C's general denial was qualified with a request for elaboration that was never responded to. The record also reflects that when the E/C's adjuster was deposed before hearing but after the pretrial stipulation was filled out, he reiterated that the E/C denied organic brain damage and seizure disorder but admitted a psychiatric condition existed and admitted their responsibility to provide psychiatric care. Under these circumstances, the ambiguous pretrial stipulations were not competent, substantial evidence that psychiatric care was controverted. Similarly, the E/C's temporary suspension of benefits was not, under the circumstances, competent, substantial evidence of controversion.
The record reflects that the E/C suspended benefits after both claimant's psychiatrist and surgeon sent the E/C letters saying that claimant was ready to return to work. Months later, the surgeon explained that his earlier opinion did not account for psychiatric problems. Likewise, the psychiatrist later changed his mind and sent the E/C a string of letters reversing his earlier opinion. The E/C reinstated benefits after this occurred. Accordingly, we reverse the deputy's ruling on this issue.
Concerning the third issue, the record reflects that claimant requires continual, 24-hour-per-day attendant care. This is so even during normal sleeping hours, as claimant often wakes during the night and gets up, and must be supervised. However, in view of the decisions in Amador v. Parts Depo, Inc., 508 So.2d 1320 (Fla. 1st DCA 1987); Standard Blasting and Coating v. Hayman, 476 So.2d 1385 (Fla. 1st DCA 1985), and Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862 (Fla. 1st DCA 1988), we reverse as to the number of hours awarded and remand for entry of an award of 16 hours per day.[1]
Turning to the fourth issue, we conclude that the deputy erred in refusing to allow the E/C to take a credit against permanent total disability benefits for temporary total disability benefits paid after claimant reached maximum medical improvement (MMI) in July 1987. Although there was no medical opinion at that time that claimant was able to perform light work uninterruptedly, claimant's own surgeon, who fixed the MMI date, believed that claimant was a candidate for rehabilitation. Considering that under Section 440.49(1)(c), Florida Statutes, a deputy is required to determine whether there is a reasonable probability that a claimant can be rehabilitated before adjudicating him permanently totally disabled, the E/C did have a reasonable basis for continuing to pay temporary benefits within the meaning of Belam Florida Corp. v. Dardy, 397 So.2d 756 (Fla. 1st DCA 1981). Compare with Western Electric Company v. Vickers, 450 So.2d 315 (Fla. 1st DCA 1984). Accordingly, the deputy is directed on remand to enter an order permitting the requested credit.
We also conclude that the deputy erred in ordering the E/C to provide psychiatric counseling for claimant's wife and family. The record reflects that this counseling *409 was ordered in order to facilitate claimant's remaining in the home. Without the counseling, claimant's family and particularly his wife find it more difficult to deal with him and to tolerate his abusive behaviors. While we sympathize with the deputy's intent and recognize that medical testimony indicated it was more desirable for claimant to remain in the home than to be institutionalized, awarding counseling services to members of claimant's family in order to indirectly benefit claimant was beyond the deputy's authority under Section 440.13(2)(a), Florida Statutes.[2]Doctor's Hospital of Lake Worth v. Robinson, 411 So.2d 958 (Fla. 1st DCA 1982), does not require a contrary result. Additionally, the record reflects that the deputy should never have considered the issue. Counseling for the wife and family was not raised as an issue in the notice of hearing or pretrial stipulation. Because the issue was not properly raised, the deputy erred in ruling on it. Village Inn Restaurant v. Aridi, 543 So.2d 778 (Fla. 1st DCA March 31, 1989); Allman v. Meredith Corp., 451 So.2d 957 (Fla. 1st DCA 1984); Sewell Plastics, Inc. v. Jackson, 418 So.2d 442 (Fla. 1st DCA 1982).[3]
Regarding the sixth issue, the record reflects that there was a controversy about paying Dr. Latterner's present bill and for her future services. Thus, they were the proper subject of an award. H.G. Boddiford Painting Contractors, Inc. v. Boddiford, 426 So.2d 1243 (Fla. 1st DCA 1983). Likewise, continuing medical expenses were claimed, so the medication award was appropriate. However, there was no controversy about Dr. Lustgarten's future services and past and future travel expenses. Under Regal Marine Industries v. Cappucci, 523 So.2d 766 (Fla. 1st DCA 1988), the benefits which were not in controversy should not have been the subject of an order. On remand, Dr. Lustgarten's future services and past and future travel expenses should be stricken from the award and should not be part of the basis for an attorney fee award.
Finally, claimant correctly argues that the E/C never raised their technical argument on fee schedules below. Similar unraised technical arguments have been rejected on appeal. Sunland Hospital v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982); B & J Windows v. Sweitzer, 420 So.2d 363 (Fla. 1st DCA 1982); Austen Construction Management Corp. v. Waters, 508 So.2d 763 (Fla. 1st DCA 1987); A & J Tie Beam Service v. Kendle, 511 So.2d 653 (Fla. 1st DCA 1987). Accordingly, we affirm as to this issue.
Affirmed in part, reversed in part, and remanded with directions.
SHIVERS, C.J., and THOMPSON, J., concur.
NOTES
[1] This award is for care the wife provided while the suit was pending. During that time, the E/C did not provide an attendant. The award is not prospective, and different arrangements have been made for future attendant care.
[2] The statute requires the employer to furnish "to the employee" medically necessary remedial treatment, care, and attendance as long as the nature of the injury or process of recovery requires, including medicines, medical supplies, durable medical equipment, orthoses, prostheses, and other medically necessary apparatus.
[3] Apparently, the deputy decided to award this benefit because of questions asked by the E/C's own counsel on cross-examination of the wife. These questions elicited information that, at the same time claimant was being treated by a psychiatrist, the psychiatrist was also counseling claimant's wife.